FILED
08/21/17
CLERK, U. S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA, FLORIDA

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

| | |
|---|---|
| NATIONAL RADIOLOGY SOLUTIONS GROUP, PLLC,<br><br>Plaintiff,<br><br>v.<br><br>EIHAB H. TAWFIK, M.D., P.A., a Florida Corporation, d/b/a CHRIST MEDICAL CENTER,<br><br>Defendant. | CIVIL ACTION NO.<br>5:17-cv-387-Oc-34PRL<br><br>Breach of Contract, Account Stated, Unjust Enrichment |

**COMPLAINT AND REQUEST FOR JURY TRIAL**

COMES NOW, National Radiology Solutions Group, PLLC ("National Radiology"), through its undersigned counsel, and hereby sets forth its Complaint against Eihab H. Tawfik, M.D., P.A., a Florida Corporation, d/b/a Christ Medical Center ("Defendant"), and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. National Radiology is a professional limited liability company organized under the laws of the State of Kentucky with its principal place of business in Richmond, Kentucky. National Radiology has one member, an individual citizen of Kentucky.

2. Defendant is a Florida professional corporation organized under the laws of the State of Florida with its principal place of business in Citrus County, Florida.

3. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this matter because the amount in controversy, exclusive of interest and costs, exceeds $75,000.00 and the parties are of diverse citizenship.

4. Venue is proper in this Court under 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

5. On or about October 1, 2015, National Radiology and Defendant entered into a Radiology Services Agreement (the "Original Agreement") whereby National Radiology agreed to provide radiology image reading services through physicians board certified in radiology for the benefit of Defendant's patients. A true and correct copy of the Original Agreement is attached hereto and incorporated herein by reference as Exhibit "A."

6. In exchange for the services provided by National Radiology, Defendant agreed to pay National Radiology for each radiology image reading performed in accordance with the fee schedule identified in the Agreement. *See* Original Agreement, ¶ 4.1.

7. National Radiology began reading radiology images for Defendant in October 2015.

8. Between October 2015 and April 10, 2017, National Radiology performed over 30,000 radiology image interpretations for Defendant's patients at Defendant's request.

9. Each month, National Radiology submitted to Defendant an invoice and itemized statement of all services rendered during the month.

10. Defendant did not object to any of the invoices or itemized statements submitted by National Radiology.

11. Shortly after executing the Original Agreement, Defendant fell behind on its payment obligations to National Radiology.

12. National Radiology provided Defendant ample opportunity to bring its account current while National Radiology continued to provide this critical service to Defendant and its patients.

13. Nevertheless, Defendant fell further behind in its payments to National Radiology.

14. As of May 5, 2017, Defendant owed National Radiology $204,466.50, exclusive of interest and costs, for services provided by National Radiology through April 30, 2017, and Defendant was in material breach of the Original Agreement.

15. On May 5, 2017, Defendant executed a Renewed and Amended Radiology Services Agreement and Forbearance Agreement (the "New Agreement" and, collectively with the Original Agreement, the "Agreements"). A true and correct copy of the New Agreement is attached hereto as Exhibit "B."

16. In the New Agreement, Defendant acknowledged, agreed, and confirmed that it was indebted to National Radiology in the amount of $204,466.50, plus interest, and that Defendant has no defenses, offsets, counterclaims, or adverse claims with respect to such amount.

17. Pursuant to the New Agreement, Defendant agreed to make bi-weekly payments in the amount of $30,000.00 (the "Continuing Service Payments"). (New Agreement, ¶ 7)

18. Pursuant to the New Agreement, the Continuing Service Payments were to be applied first to amounts owed for services rendered during the prior month with any balance applied to the amounts owed for services rendered prior to April 30, 2017. (New Agreement, ¶ 7)

19. Pursuant to the New Agreement, Defendant also agreed to make additional payments in the amount of $20,000.00 (the "Debt Service Payments") on a set schedule, with the first Debt Service Payment due on August 3, 2017. (New Agreement, ¶ 8)

20. On or about May 19, 2017, Defendant made the first of its Continuing Service Payments in the amount of $30,000.00.

21. On May 31, 2017, National Radiology sent Defendant an invoice for services rendered during the month of May 2017 in the amount of $44,731.50. A true and correct copy of the May 2017 invoice is attached hereto as Exhibit "C."

22. On or about June 2, 2017, Defendant made the second of its Continuing Service Payments in the amount of $30,000.00.

23. On or about June 16, 2017, Defendant made the third of its Continuing Service Payments in the amount of $30,000.00.

24. Defendant has failed or refused to render any further payment to National Radiology.

25. On June 30, 2017, National Radiology sent Defendant an invoice for services rendered during the month of June 2017 in the amount of $19,914.50. A true and correct copy of the June 2017 invoice is attached hereto as Exhibit "D."

26. On July 31, 2017, National Radiology sent Defendant an invoice for services rendered during the month of July 2017 in the amount of $1,721.00. A true and correct copy of the July 2017 invoice is attached hereto as Exhibit "E."

27. Upon information and belief, Defendant has received or will receive payment from the patient or its insurance company for each of the services rendered by National Radiology.

28. Upon information and belief, Defendant has received or will receive payment from the patient or its insurance company for each of the services rendered by National Radiology in an amount greater than the amount charged to Defendant by National Radiology for such services.

29. Defendant has failed or refused to render payment to National Radiology for any of the Continuing Service Payments due after June 16, 2017.

30. Defendant failed or refused to render payment to National Radiology for the Debt Service Payments when due.

31. Defendant is in default and material breach under the New Agreement.

32. After accounting for all credits and payments made by Defendant pursuant to the terms of the Agreements, Defendant has failed to pay National Radiology (i) for services rendered through April 30, 2017, in the amount of $159,198.00 and (ii) for services rendered from May 1 through July 2017 in the amount of $21,635.50.

33. The total amount of $180,833.50, plus interest, is past due and owed to National Radiology.

34. National Radiology has been forced to retain the undersigned counsel to prosecute this action and has become obligated to pay undersigned counsel reasonable attorneys' fees. National Radiology is entitled to recover reasonable attorneys' fees and costs against Defendant pursuant to Section 15 of the New Agreement.

35. All conditions precedent to this action have been performed or have occurred, or have otherwise been waived.

**COUNT ONE – BREACH OF CONTRACT – ORIGINAL AGREEMENT**

36. Paragraphs 1 through 35 are hereby realleged in their entirety and incorporated herein by reference.

37. National Radiology has performed all of its obligations and conditions precedent to its overall contractual arrangement with Defendant.

38. Defendant materially breached the Original Agreement by failing to remit payment to National Radiology pursuant to the terms thereof.

39. As a direct and proximate result of Defendant's failure to make payment as required, National Radiology has been damaged.

40. National Radiology is therefore entitled to damages resulting from Defendant's breaches of the Original Agreement.

**WHEREFORE**, Plaintiff, National Radiology Solutions Group, PLLC, demands judgment against Defendant, Eihab H. Tawfik, M.D., P.A., a Florida Corporation, d/b/a Christ Medical Center, for breach of the Original Agreement in the amount of $159,198.00, plus interest, attorneys' fees, and costs, and any and all other relief this Court deems just and proper.

## COUNT TWO – BREACH OF CONTRACT – NEW AGREEMENT

41. Paragraphs 1 through 35 are hereby realleged in their entirety and incorporated herein by reference.

42. National Radiology has performed all of its obligations and conditions precedent to its overall contractual arrangement with Defendant.

43. Defendant materially breached the New Agreement by failing to remit payment to National Radiology pursuant to the terms of the New Agreement.

44. As a direct and proximate result of Defendant's failure to make payment as required by the New Agreement, National Radiology has been damaged.

45. National Radiology is therefore entitled to damages resulting from Defendant's breaches of the New Agreement.

**WHEREFORE**, Plaintiff, National Radiology Solutions Group, PLLC, demands judgment against Defendant, Eihab H. Tawfik, M.D., P.A., a Florida Corporation, d/b/a Christ Medical Center, for breach of the New Agreement in the amount of $21,635.50, plus interest, attorneys' fees, and costs, and any and all other relief this Court deems just and proper.

**COUNT THREE – ACCOUNT STATED**

46. Paragraphs 1 through 35 are hereby realleged in their entirety and incorporated herein by reference.

47. National Radiology provided radiology image reading services to Defendant from approximately October 2015 through July, 2017, pursuant to the Agreements between Defendant and National Radiology.

48. National Radiology submitted monthly invoices to Defendant accompanied by itemized statements that set forth in detail all items charged to Defendant and the total amount due for services rendered during such month.

49. Defendant received monthly invoices and statements and neither objected to any of the invoices or itemized statements submitted by National Radiology or indicated that they were erroneous in any respect.

50. The amount claimed by National Radiology, $180,833.50, represents the cumulative total of the agreed upon price for each of the services provided by National Radiology.

51. The amount claimed by National Radiology, $180,833.50, represents the reasonable value for each of the services provided by National Radiology.

52. National Radiology actually performed each of the services identified in the itemized statements and invoices and for which it remains unpaid in the amount of $180,833.50.

53. As a result of the foregoing, National Radiology has stated an account with Defendant in an amount not less than $180,833.50, plus interest to accrue until the principal obligation is satisfied.

**WHEREFORE**, Plaintiff, National Radiology Solutions Group, PLLC, demands judgment against Defendant, Eihab H. Tawfik, M.D., P.A., a Florida Corporation, d/b/a Christ

Medical Center, in the amount of $180,833.50, plus interest, attorneys' fees, and costs, and any and all other relief this Court deems just and proper.

## COUNT FOUR – UNJUST ENRICHMENT

54. Paragraphs 1 through 4, 7 through 14, and 21 through 35 are hereby realleged in their entirety and incorporated herein by reference.

55. National Radiology has conferred a benefit upon Defendant by performing radiology image reading services for the benefit of Defendant and its patients.

56. Defendant has knowledge of the benefit conferred upon it by National Radiology related to the performance of the radiology image reading services and Defendant accepted or retained the benefit conferred.

57. The circumstances are such that it would be inequitable for Defendant to retain the benefit conferred upon it by National Radiology without paying fair value for it.

58. National Radiology has suffered damages and Defendant has been unjustly enriched by virtue of its acceptance of the radiology image reading services performed by National Radiology and Defendant's failure to pay National Radiology fair value for the services rendered.

59. National Radiology does not have an adequate remedy at law.

**WHEREFORE,** Plaintiff, National Radiology Solutions Group, PLLC, demands judgment against Defendant, Eihab H. Tawfik, M.D., P.A., a Florida Corporation, d/b/a Christ Medical Center, in the amount of $180,833.50, plus interest, and any and all other relief this Court deems just and proper.

## JURY DEMAND

National Radiology demands a trial by jury as to all issues so triable.

Dated this 17 day of August, 2017.

By: ______________________

J. Ben Vitale
Gurley Vitale, P.A.
Florida Bar No. 0088304
bvitale@GurleyVitale.com
Secondary: eservice@GurleyVitale.com
601 S. Osprey Avenue
Sarasota, FL 34236
Telephone: (941) 365-4501
Facsimile: (941) 365-2916

*Counsel for Plaintiff*

# Exhibit A

# RADIOLOGY SERVICES AGREEMENT

This RADIOLOGY SERVICES AGREEMENT (this "**Agreement**") is entered into as of October 1, 2015 ("**Effective Date**") by and between Christ Medical Center ("**Center**"), and National Radiology Solutions Group, PLLC ("**Provider**"). Center and Provider may be referred to herein individually as a "**party**" and collectively as the "**parties**".

## RECITALS:

**WHEREAS,** Center provides the space, equipment and facilities necessary to provide radiology imaging services;

**WHEREAS,** Provider provides radiology image reading services (the "**Services**") through physicians board certified in radiology ("**Radiologists**") for the locations identified on Exhibit A, attached to and incorporated into this Agreement, as updated from time to time (the "**Locations**") and wishes to provide the Services to Center subject to the terms and conditions of this Agreement; and

**WHEREAS,** Center has determined that an exclusive relationship with Provider will best facilitate the delivery of efficient, effective and quality patient care and desires to engage Provider to provide the Services as provided herein.

**NOW, THEREFORE,** for and in consideration of the mutual covenants and conditions contained herein, and for mutual consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## ARTICLE I
## PROFESSIONAL SERVICES

### 1.1 PROVIDER DUTIES.

(a) Provider will ensure that the Services are available to Center as provided in this Agreement and in accordance with the schedule set forth in Section 1.2.

(b) Provider will develop and deliver to Center a clinical report contemporaneously with each teleradiology image reading in a form and format reasonably acceptable to Center.

(c) Provider will recruit, credential and maintain a staff of Radiologists sufficient to perform the Services as provided in this Agreement. Provider will manage all scheduling, training, compensation and benefits available to such Radiologists in connection with the Services.

(d) Provider will develop and maintain accurate and complete files and records reasonably requested by Center for the Services performed hereunder.

(e) Provider will cause Radiologists to use and disclose patient health information received for the Services only as permitted by applicable laws.

(f) Provider will maintain during the term of this Agreement all teleradiology equipment, systems and connectivity necessary to receive patient information and images from Center to provide the Services and will promptly implement system changes necessary to remain compatible with

the commercially-available teleradiology imaging equipment maintained by Center hereunder. The cost of each such compatibility change in excess of $1,000 will be charged to Center.

(g) Provider will ensure that the standard of medical practice employed by each Radiologist providing Services to Center shall be consistent with the facilities available and with the generally prevailing standards established in the medical community of which Center is a part.

(h) Provider will ensure that Provider and each Radiologist providing Services to Center will immediately upon discovery notify Center of any denial, suspension, revocation or curtailment of Radiologist licensure or certification status.

1.2 **SERVICE SCHEDULE:** Provider shall use its best efforts to provide the Services according to the following schedule:

(a) Non-Stat requests for Services received by Provider during the period 8:00 a.m. to 8:00 p.m. EST Monday through Friday (except for federal holidays) ("**Regular Coverage Hours**") shall be completed, including a report transmitted to Center within twenty-four (24) hours of Provider's receipt of both the patient information and images from Center;

(b) Non-Stat requests for Services received by Provider outside of Regular Coverage Hours shall be completed, including a report transmitted to Center within twenty-four (24) hours of the beginning of the next Regular Coverage Hour following Provider's receipt of both the patient information and images from Center;

(c) STAT requests for Services receive by Provider during Regular Coverage Hours shall be given priority and will be completed, including a report transmitted to Center within, on average, one (1) hour following Provider's receipt of both the patient information and images from Center.

(d) STAT requests for Services received by Provider outside of Regular Coverage Hours shall be given priority and will be completed, including a report transmitted to Center within, on average, one (1) hour following the beginning of the next Regular Coverage Hour following Provider's receipt of both the patient information and images from Center.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF PROVIDER

2.1 **REPRESENTATIONS AND WARRANTIES.** Provider hereby represents and warrants to Center as of the Effective Date that each Radiologist who performs any Services for the Center:

(a) is licensed without restriction to practice medicine in the applicable Locations; and

(b) has never been convicted of a crime related to healthcare fraud, been found liable in any civil matter arising out of a violation of any federal or state healthcare law, has never been excluded from or otherwise subject to any penalties or sanctions arising out of any such Radiologist's participation in a federal health care program.

## ARTICLE III
## OBLIGATIONS OF CENTER

3.1 **SYSTEMS.** Center will maintain during the term of this Agreement all teleradiology equipment, systems and connectivity necessary to provide Provider with patient information and images

necessary and appropriate for Provider's Radiologists to perform the Services. Center will ensure that images transmitted to Provider are of sufficient image quality as to readable as determined in the reasonable judgment of Provider's Radiologists.

3.2 **BILLING.** Center shall be solely responsible for billing of radiology services rendered to Center's patients. Center will be responsible at its own expense for such billing and fee collection. Each party will cooperate with the other party in maintaining records to facilitate accurate reimbursement and payment.

3.3 **LIMITATION OF BILLING.** Professional services to patients for which Provider or Radiologist bills shall be personally furnished to the individual patient, shall contribute directly to the diagnosis or treatment of the individual patient, shall be of a type ordinarily requiring performance by a physician, and shall be identifiable, direct, and discrete diagnostic and therapeutic services to an individual patient.

## ARTICLE IV
## SERVICE FEES

4.1 **SERVICE FEES.** Center will pay Provider for each radiology image reading provided hereunder according to the following fee schedule. All reimbursement below is inclusive of transcription costs.

(a) **Modality List:**

| | |
|---|---|
| DR | $9 per study |
| Ultrasound | $19 per study |
| Mammography | $26 per study - no additional charges for diagnostic exams |
| CT | $30 per study |
| MRI | $50 per study |
| Nuclear Medicine | $32.5 per study |
| Echo Cardiogram | $32.5 per study |

(b) To the extent that STAT readings provided under Subsections 1.2(c) or 1.2(d) exceed 10% of the total radiology image readings provided in a given calendar month, each additional STAT exam over the 10% of aggregate readings will be subject to a $10.00 surcharge.

(c) Provider will offer one full eight (8) hour day of coverage by an ABR certified radiologist one day per week free of charge. The radiologist will report to Provider and meet the mutually agreed upon responsibilities between Provider and Center. Coverage will occur during regular business hours.

4.2 **PAYMENT TERMS.**

(a) Provider shall submit a monthly invoice to Center for Services performed during in the prior month during the term of this Agreement. The invoice will provide the number and type of study for each radiology image reading performed by Provider's Radiologists during the invoice period.

(b) Center shall pay Provider in full within fifteen (15) business days from the invoice date. Unpaid amounts due and owing from Center to Provider hereunder will be subject to a late fee of 1.5% per month if not paid within thirty (30) calendar days of the invoice date.

## ARTICLE V
## RECORDS

**5.1 ACCESS TO RECORDS.** Provider will maintain records related to the Service provided during the term of this Agreement, including all books, documents and records necessary to certify the nature and extent of the cost of those services, for at least ten (10) years from the applicable date of service and will promptly make such information available to Center upon reasonable prior notice. Provider will require any contractor or subcontractor performing services on Provider's behalf under this Agreement to maintain records required by this Section.

## ARTICLE VI
## INSURANCE AND INDEMNIFICATION

**6.1 MINIMUM INSURANCE COVERAGE.** Provider shall purchase and maintain at its expense during the term of this Agreement professional liability insurance coverage from a commercial insurance company licensed to transact insurance in the jurisdiction in which the Services are performed in an amount equal to the greater of (i) one million dollars ($1,000,000) per claim and three million dollars ($3,000,000) in the aggregate per year. Upon reasonable request, Provider shall provide Center proof of insurance evidencing purchase of the requisite Minimum Coverage. Provider shall notify Center at least thirty (30) days prior to the voluntary cancellation or termination of the Minimum Coverage or any change in insurance companies and immediately upon receipt of any notice of involuntary cancellation or termination of the Minimum Coverage.

**6.2 INDEMNIFICATION.**

(a) Provider will indemnify, defend and hold Center, and Center's officers, directors, employees, agents, successors and assigns (collectively the "**Indemnified Center Party**") harmless from and against any third-party claim, damage, loss (including any amounts paid in compromise or settlement of disputed claims), expenses, liability, obligation, action or cause of action, including reasonable attorneys' fees and all costs of investigation (collectively the "**Indemnified Claims**"), which the Indemnified Center Party may sustain, pay, suffer or incur by reason of any act, omission or negligence of Provider, Provider's contractors, agents or employees or any Radiologist in performing services under this Agreement.

(b) Center will indemnify, defend and hold Provider, and Provider's officers, directors, employees, agents, successors and assigns (collectively the "**Indemnified Provider Party**") harmless from and against any Indemnified Claims which the Indemnified Provider Party may sustain, pay, suffer or incur by reason of any act, omission or negligence of Center and/or Center's contractors, agents or employees.

**6.3 CLAIMS.** Each party shall cooperate with the other party's insurance carriers, risk managers, and/or their designees regarding any legal claims, investigations or lawsuits involving the services provided hereunder and shall immediately notify the other party upon receipt of notification of any such claim, investigation or lawsuit and, except when privileged, shall permit the other party to review records of Services rendered hereunder, upon reasonable prior notice.

## ARTICLE VII
## STATUS OF PARTIES

**7.1 INDEPENDENT CONTRACTOR STATUS.** Center acknowledges that Provider may engage employees, agents and independent contractors in order to facilitate its performance of the professional services, duties and obligations contemplated by this Agreement. Such persons shall be the employees, agents or independent contractors of Provider, not Center, and such persons shall report to and, if applicable, be subject to the control of Provider, not Center. Center shall neither have nor exercise any control or direction over the methods or manner by which Provider's personnel perform their professional services and functions. Except for requiring the coverage of services called for in this Agreement, Center shall not set nor shall it have the right to set, the specific working hours of Provider's personnel. Provider's personnel, including Radiologists, shall not be subject to any procedures applicable to Center employees, nor shall they be entitled to employee benefits including vacation pay, sick leave, retirement benefits, Social Security, Workers' Compensation, disability or unemployment insurance benefits that may be provided to Center's employees.

**7.2 PAYMENT OF TAXES.** Provider acknowledges that it will have sole responsibility for the payment of all federal, state and local estimated, withholding and employment taxes arising out of its relationship with and the performance of Services for Center.

**7.3 EXCLUSIVE ARRANGEMENT.** Provider shall be the sole and exclusive provider of the radiology services to Center during the term of this Agreement.

**7.4 COMPLIANCE WITH LAWS.** The parties will comply with all applicable federal, state and local laws, including, the federal Anti-kickback Statute, Stark Law, the False Claims Act. The parties expressly acknowledge and agree that it is not a purpose nor a requirement of this Agreement to either (1) solicit, require, induce or encourage the payment of remuneration in return for the referral of any patient or for the purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering, any good, facility, service or item for which payment may be made, in whole or in part, under any federal or state health care program or for purchasing; or (2) offer or pay any remuneration in return for the referral of an individual for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a federal health care program. The parties further acknowledge and agree that it is the intent of the parties to comply with the applicable safe harbor regulations to the federal Anti-kickback Statute and the exceptions to Stark II to the fullest extent possible. The parties hereto represent and warrant that compensation paid to the Provider is not tied to the value or volume or other business generated by referring patients to the Center.

**7.5 NO REQUIREMENT TO REFER.** Nothing in this Agreement is to be construed to restrict a Radiologist's professional judgment to use another medical facility where necessary or desirable in order to provide proper and appropriate treatment or care to a patient or to comply with the wishes of the patient or patient's family.

## ARTICLE VIII
## TERM AND TERMINATION

**8.1 TERM.** This Agreement shall commence on the Effective Date and will continue until terminated as provided in this Article VIII.

**8.2 TERMINATION WITHOUT CAUSE.** Either party may terminate this Agreement without cause by giving ninety (90) calendar days prior written notice to the other party.

**8.3 TERMINATION FOR CAUSE.** Either party may immediately terminate this Agreement upon the occurrence of any one or more of the following events:

(a) Agreement of the other party in writing to terminate this Agreement.

(b) Material breach of this Agreement by the other party that is not cured within ten (10) calendar days after written notice of the breach is provided to the other party.

(c) Provider is excluded from the Medicare or State Medicaid program, is convicted of a Medicare or Medicaid program offense; pleads guilty or nolo contendere to criminal charges arising out of an alleged Medicare or Medicaid program violation; or, is held civilly liable for or settles a civil matter in which it is alleged that the Provider violated a state or federal health care statute, law, rule or regulation specifically including, but not limited to, the federal Anti-Kickback Statute, the Stark Law, or the False Claims Act.

(d) The institution of any proceeding by or against a party arising from any insolvency, bankruptcy or assignment for the benefit of creditors, which proceeding has not been dismissed within thirty (30) calendar days after the institution of such proceeding; or either party declares bankruptcy or makes an assignment for the benefit of creditors.

## ARTICLE IX
## MISCELLANEOUS

**9.1 RESTRICTIVE COVENANTS:**

(a) **Non-solicitation.** Each party agrees that for a period of two (2) years following termination of this Agreement, neither party shall on its behalf or on behalf of any individual or entity, hire, attempt to hire, or induce or attempt to induce any individual who is an employee of the other to terminate such employee's relationship with the other party. This Section 9.1 (a) shall survive termination of this Agreement.

(b) **Non-solicitation of Contractors.** Center agrees that for a period of two (2) years following termination of this Agreement that Center shall not enter into any agreement for services with any physician providing services to Center under this Agreement. This Section 9.1 (b) shall survive termination of this Agreement.

**9.2 FORCE MAJEURE.** Except for the performance of payment obligations hereunder, neither party will be liable or deemed to be in default for any delay or failure in performance under this Agreement or other interruption of service deemed to result, directly or indirectly, from an act of God, civil or military authority, acts of public enemy, war, accidents, fires, explosions, earthquakes, floods, failure, or transportation, strikes or other work interruptions by either party's employees, or any other similar cause beyond the reasonable control of such party.

9.3 **NOTICES.** Notices permitted or required to be given under this Agreement shall be mailed or delivered to the parties at the following addresses:

If to Provider: National Radiology Solutions Group, PLLC
101 Alycia Drive
Richmond, KY 40475
Attention: Robert S. Kolb, President

If to Center: Christ Medical Center
7562 W. Gulf To Lake Highway
Crystal River, FL 34429
Attention: Eliot Appel CEO

or such other addresses as the parties shall inform each other of in writing. A notice sent by mail pursuant to the above shall be deemed received by the party to whom sent on the third (3rd) business day next following the date of mailing. A notice personally delivered shall be deemed received by the party to whom sent on the date of delivery.

9.4 **AMENDMENTS.** Any amendment to this Agreement shall not be operative or valid unless the same is reduced to writing and approved by the parties.

9.5 **ASSIGNABILITY.** Neither party may assign any of its rights or obligations under this Agreement without the express written consent of the other party.

9.6 **SEVERABILITY AND TERMINATION PROVISIONS.** If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws in effect during the term of this Agreement, the legality, validity or enforceability of the remaining provisions of this Agreement shall not be affected thereby, and in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be legal, valid and enforceable.

9.7 **ENTIRE AGREEMENT.** This Agreement constitutes the full contract and agreement of the parties, superseding all prior or contemporaneous agreements, either oral or written.

9.8 **GOVERNING LAW.** This Agreement and the construction and interpretation thereof ~~shall be governed by the laws of the State of Kentucky.~~

9.9 **NON-WAIVER.** The failure of either party to exercise any of its rights under this Agreement for a breach thereof shall not be deemed to be a waiver of such rights or a waiver of any subsequent breach.

9.10 **RECITALS.** The Recitals are incorporated into this Agreement as if fully set forth herein.

9.11 **COUNTERPARTS.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute a single agreement.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed by their respective authorized representatives as of the Effective Date.

| **Center:** | **Provider:** |
| --- | --- |
| By:____________________ | By:____________________ |
| Its: CEO | Its: Manager – CEO |

**EXHIBIT A**

**Provider Locations**

Provider's Radiologists are qualified to perform professional services in the following U.S. jurisdictions:

- Alabama
- California
- Florida
- Georgia
- Indiana
- Kentucky
- Michigan
- New York
- North Carolina
- Ohio
- South Carolina
- Tennessee
- Texas

This Exhibit A may be updated from time to time with notice to Center.

# Exhibit B

**RENEWED AND AMENDED RADIOLOGY SERVICES AGREEMENT AND FORBEARANCE AGREEMENT**

This Renewed and Amended Radiology Services Agreement and Forbearance Agreement (the "Renewed Agreement") is hereby entered into as of this 5th day of May, 2017, by and between National Radiology Solutions Group, PLLC ("Provider") and Elhab H. Tawfik, M.D., P.A. d/b/a Christ Medical Center ("Center"), each of which is individually referred to herein as the "Party" and collectively referred to herein as the "Parties."

WHEREAS Provider and Center are parties to that certain Radiology Services Agreement dated October 1, 2015 (the "Original Agreement"), a copy of which is attached hereto as Exhibit "1," whereby Provider agreed to provide certain radiology image reading services (the "Services") to Center in exchange for specified fees as set forth in the Original Agreement;

WHEREAS, as of the date of this Renewed Agreement, Center owes Provider the amount of $204,466.50, exclusive of interest and costs, for Services provided through April 30, 2017, and such amounts are past due and owing (the "Past Due Amounts");

WHEREAS Center is in material breach of the Original Agreement due to Center's failure to make payment to Provider for the Past Due Amounts (the "Breach");

WHEREAS Provider has a right to immediate payment of the Past Due Amount and Center has received proper notice of and an opportunity to cure the Breach and has not cured said Breach;

WHEREAS the Original Agreement was properly terminated effective April 10, 2017;

WHEREAS the Parties mutually desire to enter into an agreement whereby Provider will resume providing Services to Center and Center will pay for such Services subject to the terms and conditions set forth in the Original Agreement and as modified and amended herein;

WHEREAS Center has no defenses, offsets, counterclaims, or adverse claims of any kind or amount with respect to the Original Agreement or the Breach;

WHEREAS Provider is willing to forbear from enforcing its rights arising from Center's Breach, provided that Center comply with the terms of this Renewed Agreement;

WHEREAS the Parties enter into this Renewed Agreement with the understanding and agreement that, except as specifically provided herein, none of Provider's rights or remedies as set forth in the Original Agreement are waived or modified by the terms of this Renewed Agreement.

NOW, THEREFORE, in consideration of the mutual covenants and agreements set forth herein, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto, intending to be legally bound, agree as follows:

1. Center acknowledges that the Recitals set forth above are true, accurate, and correct and are incorporated into these Provisions of this Renewed Agreement.

2. Unless the context clearly requires otherwise, capitalized terms used but not defined herein shall have the meanings set forth in the Original Agreement.

3. Except as modified by this Renewed Agreement, Center reaffirms all of its obligations under the Original Agreement.

4. Center hereby acknowledges, agrees, and confirms without condition or reservation that:

   a. Center is indebted to Provider on account of the Original Agreement and the Services provided thereunder through April 30, 2017, in the amount of $204,466.50, plus interest, and that such amount is due and owing without offset, defense, claims or counterclaim of any kind or nature;

   b. The Original Agreement is valid, binding, and fully enforceable against Center and Center has no defense to enforcement by Provider of any of its rights under the Original Agreement;

   c. Provider has complied with the Original Agreement in all respects and has acted reasonably, in good faith, and in compliance with applicable law;

   d. The purpose of Provider's agreement to forbear from enforcing its rights as set forth in this Renewed Agreement is to allow Center to pay its obligations and to allow Center additional time to cure the Breach; and

   e. The forbearance by Provider is a direct and substantial benefit to Center.

5. Forbearance by Provider.

   a. Provided that (i) no default or breach, other than the existing Breach, has occurred under the Original Agreement or this Renewed Agreement, and (ii) in the Provider's reasonable determination, neither Center's financial condition nor creditworthiness have declined materially from the date hereof, Provider shall forbear from exercising its rights and remedies under the Original Agreement.

   b. Center acknowledges and agrees that Provider's forbearance hereunder shall not constitute: (i) a continuing or future waiver of, bar to, or agreement to forbear or refrain from proceeding with respect to any default or breach other than the Breach identified herein, (ii) a waiver of, or forbearance with respect to, any default or breach arising out of any misrepresentation or concealment, or (iii) a waiver of Provider's rights or remedies after expiration of the Forbearance Period for a period of eighteen (18) months from the date of this Renewed Agreement (the "Forbearance Period").

6. For purposes of establishing the terms and conditions related to all Services provided after the date of this Renewed Agreement, the terms and conditions of the Original Agreement are expressly incorporated herein and made a part hereof, except to the extent modified or amended herein. In the event of a conflict between the terms and conditions of this Renewed Agreement and the terms and conditions set forth in the Original Agreement, the terms and conditions set forth in this Renewed Agreement shall control.

7. Center shall make payments to Provider every two weeks in the amount of $30,000 each (the "Continuing Service Payments"). Center shall make the first of the Continuing Service Payments to Provider on or before the first Friday following Center's execution of this Renewed Agreement and all subsequent Continuing Service Payments shall be due every other Friday thereafter. The Continuing Service Payments shall be applied first to outstanding and invoiced charges for Services performed after the date of this Renewed Agreement and second to the balance of the Past Due Amount. To the extent the Services rendered during any given month exceed $60,000, in addition to the Continuing Service Payments

and the Debt Service Payments, Center shall remit payment to Provider for all amounts exceeding $60,000 within twenty-eight (28) calendar days of the date of such invoice. For clarity and as an illustration of how Continuing Service Payments will be applied, if Provider submits a monthly invoice for Services performed during the prior month in the amount of $45,000, the first Continuing Service Payment received thereafter will be applied in full to such invoice and half of the second Continuing Service Payment received thereafter will be applied to such invoice with the remaining half applied to the Past Due Amount. As a further illustration, if Provider submits a monthly invoice for Services performed during the prior month in the amount of $65,000, the next two Continuing Service Payments received thereafter will be applied in full to such invoice and Center shall remit an additional payment to Provider in the amount of $5,000 within four (4) weeks of the date of the invoice.

8. In addition to the Continuing Service Payments, Center shall make payments to Provider in the amount of $20,000 (the "Debt Service Payments") pursuant to the following schedule until no balance remains for the Past Due Amounts: (i) the first Debt Service Payment shall be due on or before ninety (90) calendar days after Center's execution of this Renewed Agreement; (ii) the second Debt Service Payment shall be due on or before one hundred and eighty (180) calendar days after Center's execution of this Renewed Agreement; and (iii) the third Debt Service Payment shall be due on or before two hundred and forty (240) calendar days after Center's execution of this Renewed Agreement and each subsequent Debt Service Payment shall be every sixty (60) calendar days thereafter until no balance remains for the Past Due Amounts.

9. All payments required hereunder shall be made by ACH transfer to an account designated by Provider and must be received in Provider's account on or before the date due in order to be timely made.

10. The Parties agree that time is of the essence with regard to Center's payment obligations and failure to make any payment on or before the date due shall be a material breach of the Original Agreement and this Renewed Agreement. As used herein, the term "Default" shall mean a failure to make any payment due under this Renewed Agreement. In addition to any rights and remedies Provider may have, Provider may immediately terminate this Renewed Agreement, without prior notice or an opportunity to cure, upon the occurrence of a Default.

11. No delay or omission on the part of the Provider to exercise any right provided it by the Original Agreement or this Renewed Agreement shall impair any such right or be construed to be a waiver of any such right or any acquiescence to the state of facts giving rise to such right. No waiver of any default hereunder shall affect any later default or impair any right of Provider. Provider reserves the right to accept late and partial payments without waiving any of its rights under the terms of this Renewed Agreement. No single, partial or full exercise of any right by Provider shall preclude further or other exercise thereof.

12. The Parties expressly agree and acknowledge that Section 4.1(c) of the Original Agreement shall not apply to this Renewed Agreement and is excluded from this Renewed Agreement and no coverage by an ABR certified radiologist will be provided.

13. In addition to any other termination rights available to Provider, Provider may immediately terminate this Renewed Agreement, without prior notice or an opportunity to cure, upon the occurrence of any material breach of this Renewed Agreement, including but not limited to any failure by Center to timely remit any payment required herein to Provider.

14. Any amounts due and owing from Center to Provider hereunder will be subject to a late fee of 1.5% per month if not paid by the date due.

15. Should any type of claim be made or action, proceeding, or alternative dispute resolution proceeding or process be commenced with respect to, arising out of, concerning, or related to this Renewed Agreement or the Original Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees, appellate attorneys' fees, expert fees, paralegal fees and all reasonable costs incurred of any type whatsoever, whether taxable at law or not, in any way related to or arising from any such claim, action, proceeding or process.

16. This Renewed Agreement shall inure to the benefit of and bind all of the Parties hereto and any and all of their respective current and former officers, directors, owners, principals, shareholders, employees, insurers, sureties, partners, assigns, predecessors and successors in interest, parent and related corporations and entities, lenders, mortgagees, heirs, executors and administrators.

17. This Renewed Agreement, including the terms and conditions contained herein, embodies the entire, final, integrated agreement between the parties and no other agreements, instruments or papers, oral or otherwise, except those set forth in or expressly identified in this Renewed Agreement shall be deemed to exist or bind any of the parties hereto; provided, however, that this Renewed Agreement does not replace or extinguish the Original Agreement. This Renewed Agreement may only be changed or modified by a writing executed by all parties hereto.

18. Any notice, request, demand, consent or approval permitted or required to be given under this Renewed Agreement shall be in writing and deemed to have been sufficiently given, delivered, and valid for all purposes hereunder if sent either by (a) personal hand delivery to the individual or duly authorized agent of the entity specified below as verified by a receipt, (b) by prepaid certified mail, return receipt requested, (c) by prepaid recognized overnight delivery service with receipt, or (d) by electronic mail, addressed in any to the addresses below or to any other address either of the parties to this Renewed Agreement shall designate by ten (10) days written notice to the other party:

If to Provider:

National Radiology Solutions Group, PLLC
101 Alycia Drive
Richmond, KY 40475
Attention: Robert S. Kolb, President
Email: rkolb@nradsolutions.com

If to Center:

Christ Medical Center
7562 W. Gulf to Lake Highway
Crystal River, FL 34429
Attn: Dr. Eihab Tawfik, M.D.
Email: tawfik.eihab@gmail.com

Notices shall be deemed properly given, delivered, served and received as of the date of receipt or rejection, if sent by certified mail, overnight delivery service, or hand delivery, and as of the date sent, if sent by electronic mail.

19. In entering into this Renewed Agreement, each party acknowledges and affirms that it is under no duress or compulsion to enter into this Renewed Agreement and does so of its own free will and with advice of its own respective counsel.

20. If any portion of this Renewed Agreement is held to be illegal, invalid or unenforceable, by a court, the remainder of this Renewed Agreement shall remain in effect as written.

21. This Renewed Agreement is and shall be deemed jointly drafted and written by the parties and shall not be construed or interpreted against the party originating or preparing it.

22. The Parties hereto agree that this Renewed Agreement may be executed in any number of counterparts and by separate signature pages or by facsimile or electronic transmission, each of which shall be deemed to be an original as against any Party hereto.

IN WITNESS WHEREOF, with the intent to be legally bound hereby, the Parties hereto have executed this Renewed Agreement.

| EIHAB H. TAWFIK, M.D., P.A. d/b/a CHRIST MEDICAL CENTER | NATIONAL RADIOLOGY SOLUTIONS GROUP, PLLC |
|---|---|
| By: [signature] | By: [signature] |
| Name: Elhab Tawfik | Name: Robb S. Keith |
| Title: CEO | Title: CEO |
| Dated: 5/5/17 | Dated: 5/5/17 |

# RADIOLOGY SERVICES AGREEMENT

This RADIOLOGY SERVICES AGREEMENT (this "**Agreement**") is entered into as of October 1, 2015 ("**Effective Date**") by and between Christ Medical Center ("**Center**"), and National Radiology Solutions Group, PLLC ("**Provider**"). Center and Provider may be referred to herein individually as a "**party**" and collectively as the "**parties**".

## RECITALS:

**WHEREAS**, Center provides the space, equipment and facilities necessary to provide radiology imaging services;

**WHEREAS**, Provider provides radiology image reading services (the "**Services**") through physicians board certified in radiology ("**Radiologists**") for the locations identified on Exhibit A, attached to and incorporated into this Agreement, as updated from time to time (the "**Locations**") and wishes to provide the Services to Center subject to the terms and conditions of this Agreement; and

**WHEREAS**, Center has determined that an exclusive relationship with Provider will best facilitate the delivery of efficient, effective and quality patient care and desires to engage Provider to provide the Services as provided herein.

**NOW, THEREFORE**, for and in consideration of the mutual covenants and conditions contained herein, and for mutual consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

## ARTICLE I
## PROFESSIONAL SERVICES

### 1.1 PROVIDER DUTIES.

(a) Provider will ensure that the Services are available to Center as provided in this Agreement and in accordance with the schedule set forth in Section 1.2.

(b) Provider will develop and deliver to Center a clinical report contemporaneously with each teleradiology image reading in a form and format reasonably acceptable to Center.

(c) Provider will recruit, credential and maintain a staff of Radiologists sufficient to perform the Services as provided in this Agreement. Provider will manage all scheduling, training, compensation and benefits available to such Radiologists in connection with the Services.

(d) Provider will develop and maintain accurate and complete files and records reasonably requested by Center for the Services performed hereunder.

(e) Provider will cause Radiologists to use and disclose patient health information received for the Services only as permitted by applicable laws.

(f) Provider will maintain during the term of this Agreement all teleradiology equipment, systems and connectivity necessary to receive patient information and images from Center to provide the Services and will promptly implement system changes necessary to remain compatible with



EXHIBIT 1

the commercially-available teleradiology imaging equipment maintained by Center hereunder. The cost of each such compatibility change in excess of $1,000 will be charged to Center.

(g) Provider will ensure that the standard of medical practice employed by each Radiologist providing Services to Center shall be consistent with the facilities available and with the generally prevailing standards established in the medical community of which Center is a part.

(h) Provider will ensure that Provider and each Radiologist providing Services to Center will immediately upon discovery notify Center of any denial, suspension, revocation or curtailment of Radiologist licensure or certification status.

1.2 **SERVICE SCHEDULE:** Provider shall use its best efforts to provide the Services according to the following schedule:

(a) Non-Stat requests for Services received by Provider during the period 8:00 a.m. to 8:00 p.m. EST Monday through Friday (except for federal holidays) (**"Regular Coverage Hours"**) shall be completed, including a report transmitted to Center within twenty-four (24) hours of Provider's receipt of both the patient information and images from Center;

(b) Non-Stat requests for Services received by Provider outside of Regular Coverage Hours shall be completed, including a report transmitted to Center within twenty-four (24) hours of the beginning of the next Regular Coverage Hour following Provider's receipt of both the patient information and images from Center;

(c) STAT requests for Services receive by Provider during Regular Coverage Hours shall be given priority and will be completed, including a report transmitted to Center within, on average, one (1) hour following Provider's receipt of both the patient information and images from Center.

(d) STAT requests for Services received by Provider outside of Regular Coverage Hours shall be given priority and will be completed, including a report transmitted to Center within, on avarage, one (1) hour following the beginning of the next Regular Coverage Hour following Provider's receipt of both the patient information and images from Center.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES OF PROVIDER

2.1 **REPRESENTATIONS AND WARRANTIES.** Provider hereby represents and warrants to Center as of the Effective Date that each Radiologist who performs any Services for the Center:

(a) is licensed without restriction to practice medicine in the applicable Locations; and

(b) has never been convicted of a crime related to healthcare fraud, been found liable in any civil matter arising out of a violation of any federal or state healthcare law, has never been excluded from or otherwise subject to any penalties or sanctions arising out of any such Radiologist's participation in a federal health care program.

## ARTICLE III
## OBLIGATIONS OF CENTER

3.1 **SYSTEMS.** Center will maintain during the term of this Agreement all teleradiology equipment, systems and connectivity necessary to provide Provider with patient information and images

necessary and appropriate for Provider's Radiologists to perform the Services. Center will ensure that images transmitted to Provider are of sufficient image quality as to readable as determined in the reasonable judgment of Provider's Radiologists.

3.2 **BILLING.** Center shall be solely responsible for billing of radiology services rendered to Center's patients. Center will be responsible at its own expense for such billing and fee collection. Each party will cooperate with the other party in maintaining records to facilitate accurate reimbursement and payment.

3.3 **LIMITATION OF BILLING.** Professional services to patients for which Provider or Radiologist bills shall be personally furnished to the individual patient, shall contribute directly to the diagnosis or treatment of the individual patient, shall be of a type ordinarily requiring performance by a physician, and shall be identifiable, direct, and discrete diagnostic and therapeutic services to an individual patient.

**ARTICLE IV**
**SERVICE FEES**

4.1 **SERVICE FEES.** Center will pay Provider for each radiology image reading provided hereunder according to the following fee schedule. All reimbursement below is inclusive of transcription costs:

(a) **Modality List:**

| | |
|---|---|
| DR | $9 per study |
| Ultrasound | $19 per study |
| Mammography | $26 per study - no additional charges for diagnostic exams |
| CT | $30 per study |
| MRI | $50 per study |
| Nuclear Medicine | $32.5 per study |
| Echo Cardiogram | $32.5 per study |

(b) To the extent that STAT readings provided under Subsections 1.2(c) or 1.2(d) exceed 10% of the total radiology image readings provided in a given calendar month, each additional STAT exam over the 10% of aggregate readings will be subject to a $10.00 surcharge.

(c) Provider will offer one full eight (8) hour day of coverage by an ABR certified radiologist one day per week free of charge. The radiologist will report to Provider and meet the mutually agreed upon responsibilities between Provider and Center. Coverage will occur during regular business hours.

4.2 **PAYMENT TERMS.**

(a) Provider shall submit a monthly invoice to Center for Services performed during in the prior month during the term of this Agreement. The invoice will provide the number and type of study for each radiology image reading performed by Provider's Radiologists during the invoice period.

(b) Center shall pay Provider in full within fifteen (15) business days from the invoice date. Unpaid amounts due and owing from Center to Provider hereunder will be subject to a late fee of 1.5% per month if not paid within thirty (30) calendar days of the invoice date.

## ARTICLE V
## RECORDS

5.1 **ACCESS TO RECORDS.** Provider will maintain records related to the Service provided during the term of this Agreement, including all books, documents and records necessary to certify the nature and extent of the cost of those services, for at least ten (10) years from the applicable date of service and will promptly make such information available to Center upon reasonable prior notice. Provider will require any contractor or subcontractor performing services on Provider's behalf under this Agreement to maintain records required by this Section.

## ARTICLE VI
## INSURANCE AND INDEMNIFICATION

6.1 **MINIMUM INSURANCE COVERAGE.** Provider shall purchase and maintain at its expense during the term of this Agreement professional liability insurance coverage from a commercial insurance company licensed to transact insurance in the jurisdiction in which the Services are performed in an amount equal to the greater of (i) one million dollars ($1,000,000) per claim and three million dollars ($3,000,000) in the aggregate per year. Upon reasonable request, Provider shall provide Center proof of insurance evidencing purchase of the requisite Minimum Coverage. Provider shall notify Center at least thirty (30) days prior to the voluntary cancellation or termination of the Minimum Coverage or any change in insurance companies and immediately upon receipt of any notice of involuntary cancellation or termination of the Minimum Coverage.

6.2 **INDEMNIFICATION.**

(a) Provider will indemnify, defend and hold Center, and Center's officers, directors, employees, agents, successors and assigns (collectively the "**Indemnified Center Party**") harmless from and against any third-party claim, damage, loss (including any amounts paid in compromise or settlement of disputed claims), expenses, liability, obligation, action or cause of action, including reasonable attorneys' fees and all costs of investigation (collectively the "**Indemnified Claims**"), which the Indemnified Center Party may sustain, pay, suffer or incur by reason of any act, omission or negligence of Provider, Provider's contractors, agents or employees or any Radiologist in performing services under this Agreement.

(b) Center will indemnify, defend and hold Provider, and Provider's officers, directors, employees, agents, successors and assigns (collectively the "**Indemnified Provider Party**") harmless from and against any Indemnified Claims which the Indemnified Provider Party may sustain, pay, suffer or incur by reason of any act, omission or negligence of Center and/or Center's contractors, agents or employees.

6.3 **CLAIMS.** Each party shall cooperate with the other party's insurance carriers, risk managers, and/or their designees regarding any legal claims, investigations or lawsuits involving the services provided hereunder and shall immediately notify the other party upon receipt of notification of any such claim, investigation or lawsuit and, except when privileged, shall permit the other party to review records of Services rendered hereunder, upon reasonable prior notice.

**ARTICLE VII**
**STATUS OF PARTIES**

7.1 **INDEPENDENT CONTRACTOR STATUS.** Center acknowledges that Provider may engage employees, agents and independent contractors in order to facilitate its performance of the professional services, duties and obligations contemplated by this Agreement. Such persons shall be the employees, agents or independent contractors of Provider, not Center, and such persons shall report to and, if applicable, be subject to the control of Provider, not Center. Center shall neither have nor exercise any control or direction over the methods or manner by which Provider's personnel perform their professional services and functions. Except for requiring the coverage of services called for in this Agreement, Center shall not set nor shall it have the right to set, the specific working hours of Provider's personnel. Provider's personnel, including Radiologists, shall not be subject to any procedures applicable to Center employees, nor shall they be entitled to employee benefits including vacation pay, sick leave, retirement benefits, Social Security, Workers' Compensation, disability or unemployment insurance benefits that may be provided to Center's employees.

7.2 **PAYMENT OF TAXES.** Provider acknowledges that it will have sole responsibility for the payment of all federal, state and local estimated, withholding and employment taxes arising out of its relationship with and the performance of Services for Center.

7.3 **EXCLUSIVE ARRANGEMENT.** Provider shall be the sole and exclusive provider of the radiology services to Center during the term of this Agreement.

7.4 **COMPLIANCE WITH LAWS.** The parties will comply with all applicable federal, state and local laws, including, the federal Anti-kickback Statute, Stark Law, the False Claims Act. The parties expressly acknowledge and agree that it is not a purpose nor a requirement of this Agreement to either (1) solicit, require, induce or encourage the payment of remuneration in return for the referral of any patient or for the purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering, any good, facility, service or item for which payment may be made, in whole or in part, under any federal or state health care program or for purchasing; or (2) offer or pay any remuneration in return for the referral of an individual for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a federal health care program. The parties further acknowledge and agree that it is the intent of the parties to comply with the applicable safe harbor regulations to the federal Anti-kickback Statute and the exceptions to Stark II to the fullest extent possible. The parties hereto represent and warrant that compensation paid to the Provider is not tied to the value or volume or other business generated by referring patients to the Center.

7.5 **NO REQUIREMENT TO REFER.** Nothing in this Agreement is to be construed to restrict a Radiologist's professional judgment to use another medical facility where necessary or desirable in order to provide proper and appropriate treatment or care to a patient or to comply with the wishes of the patient or patient's family.

**ARTICLE VIII**
**TERM AND TERMINATION**

8.1 **TERM.** This Agreement shall commence on the Effective Date and will continue until terminated as provided in this Article VIII.

8.2 **TERMINATION WITHOUT CAUSE.** Either party may terminate this Agreement without cause by giving ninety (90) calendar days prior written notice to the other party.

8.3 **TERMINATION FOR CAUSE.** Either party may immediately terminate this Agreement upon the occurrence of any one or more of the following events:

(a) Agreement of the other party in writing to terminate this Agreement.

(b) Material breach of this Agreement by the other party that is not cured within ten (10) calendar days after written notice of the breach is provided to the other party.

(c) Provider is excluded from the Medicare or State Medicaid program, is convicted of a Medicare or Medicaid program offense; pleads guilty or nolo contendere to criminal charges arising out of an alleged Medicare or Medicaid program violation; or, is held civilly liable for or settles a civil matter in which it is alleged that the Provider violated a state or federal health care statute, law, rule or regulation specifically including, but not limited to, the federal Anti-Kickback Statute, the Stark Law, or the False Claims Act.

(d) The institution of any proceeding by or against a party arising from any insolvency, bankruptcy or assignment for the benefit of creditors, which proceeding has not been dismissed within thirty (30) calendar days after the institution of such proceeding; or either party declares bankruptcy or makes an assignment for the benefit of creditors.

## ARTICLE IX
## MISCELLANEOUS

9.1 **RESTRICTIVE COVENANTS:**

(a) **Non-solicitation.** Each party agrees that for a period of two (2) years following termination of this Agreement, neither party shall on its behalf or on behalf of any individual or entity, hire, attempt to hire, or induce or attempt to induce any individual who is an employee of the other to terminate such employee's relationship with the other party. This Section 9.1 (a) shall survive termination of this Agreement.

(b) **Non-solicitation of Contractors.** Center agrees that for a period of two (2) years following termination of this Agreement that Center shall not enter into any agreement for services with any physician providing services to Center under this Agreement. This Section 9.1 (b) shall survive termination of this Agreement.

9.2 **FORCE MAJEURE.** Except for the performance of payment obligations hereunder, neither party will be liable or deemed to be in default for any delay or failure in performance under this Agreement or other interruption of service deemed to result, directly or indirectly, from an act of God, civil or military authority, acts of public enemy, war, accidents, fires, explosions, earthquakes, floods, failure, or transportation, strikes or other work interruptions by either party's employees, or any other similar cause beyond the reasonable control of such party.

9.3 **NOTICES.** Notices permitted or required to be given under this Agreement shall be mailed or delivered to the parties at the following addresses:

If to Provider: National Radiology Solutions Group, PLLC
101 Alycia Drive
Richmond, KY 40475
Attention: Robert S. Kolb, President

If to Center: Christ Medical Center
7562 W. Gulf To Lake Highway
Crystal River, FL 34429
Attention: Eliot Appel CEO

or such other addresses as the parties shall inform each other of in writing. A notice sent by mail pursuant to the above shall be deemed received by the party to whom sent on the third (3rd) business day next following the date of mailing. A notice personally delivered shall be deemed received by the party to whom sent on the date of delivery.

9.4 **AMENDMENTS.** Any amendment to this Agreement shall not be operative or valid unless the same is reduced to writing and approved by the parties.

9.5 **ASSIGNABILITY.** Neither party may assign any of its rights or obligations under this Agreement without the express written consent of the other party.

9.6 **SEVERABILITY AND TERMINATION PROVISIONS.** If any provision of this Agreement is held to be illegal, invalid or unenforceable under present or future laws in effect during the term of this Agreement, the legality, validity or enforceability of the remaining provisions of this Agreement shall not be affected thereby, and in lieu of such illegal, invalid or unenforceable provision, there shall be added automatically as part of this Agreement a provision as similar in terms to such illegal, invalid or unenforceable provision as may be legal, valid and enforceable.

9.7 **ENTIRE AGREEMENT.** This Agreement constitutes the full contract and agreement of the parties, superseding all prior or contemporaneous agreements, either oral or written.

9.8 **GOVERNING LAW.** This Agreement and the construction and interpretation thereof ~~shall be governed by the laws of the State of Kentucky.~~

9.9 **NON-WAIVER.** The failure of either party to exercise any of its rights under this Agreement for a breach thereof shall not be deemed to be a waiver of such rights or a waiver of any subsequent breach.

9.10 **RECITALS.** The Recitals are incorporated into this Agreement as if fully set forth herein.

9.11 **COUNTERPARTS.** This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which shall constitute a single agreement.

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed by their respective authorized representatives as of the Effective Date.

| **Center:** | **Provider:** |
|---|---|
| By:____________________ | By:____________________ |
| Its: CEO | Its: Manager — CEO |

**EXHIBIT A**

**Provider Locations**

Provider's Radiologists are qualified to perform professional services in the following U.S. jurisdictions:

- Alabama
- California
- Florida
- Georgia
- Indiana
- Kentucky
- Michigan
- New York
- North Carolina
- Ohio
- South Carolina
- Tennessee
- Texas

This Exhibit A may be updated from time to time with notice to Center.

# Exhibit C

National Radiology Solutions L.L.C.
310 Hiawassee Road
Townville, SC 29689

# Invoice

| Date | Invoice # |
|---|---|
| 5/31/2017 | 678 |

**Bill To**

Christ Medical Center
7562 W. Gulf To Lake Hwy
Crystal River, FL 34429
Attention: Maureen Lindsey

| P.O. No. | Terms | Project |
|---|---|---|
| | Net 15 | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| 582 | Computed Tomography Interpretation | 30.00 | 17,460.00 |
| 696 | Computed Radiography Interpretation | 9.00 | 6,264.00 |
| 111 | Echocardiogram Interpretation | 32.50 | 3,607.50 |
| 12 | Mammography Screening and Diagnostic Interpretation | 25.00 | 300.00 |
| 900 | Ultrasound Interpretation | 19.00 | 17,100.00 |

**Total** $44,731.50

| Fax # | E-mail |
|---|---|
| 1-855-672-3888 | rkolb@nradsolutions.com |

# Exhibit D

National Radiology Solutions L.L.C.
310 Hiawassee Road
Townville, SC 29689

# Invoice

| Date | Invoice # |
|---|---|
| 6/30/2017 | 699 |

| Bill To |
|---|
| Christ Medical Center<br>7562 W. Gulf To Lake Hwy<br>Crystal River, FL 34429<br>Attention: Maureen Lindsey |

| P.O. No. | Terms | Project |
|---|---|---|
| | Net 15 | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| 326 | Computed Tomography Interpretation | 30.00 | 9,780.00 |
| 383 | Computed Radiography Interpretation | 9.00 | 3,447.00 |
| 31 | Echocardiogram Interpretation | 32.50 | 1,007.50 |
| 3 | Mammography Screening and Diagnostic Interpretation | 25.00 | 75.00 |
| 295 | Ultrasound Interpretation | 19.00 | 5,605.00 |
| | | **Total** | $19,914.50 |

| Fax # | E-mail |
|---|---|
| 1-855-672-3888 | rkolb@nradsolutions.com |

# Exhibit E

National Radiology Solutions L.L.C.
310 Hiawassee Road
Townville, SC 29689

# Invoice

| Date | Invoice # |
|---|---|
| 7/31/2017 | 721 |

**Bill To**

Christ Medical Center
7562 W. Gulf To Lake Hwy
Crystal River, FL 34429
Attention: Maureen Lindsey

| P.O. No. | Terms | Project |
|---|---|---|
| | Net 15 | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| 54 | Computed Tomography Interpretation | 30.00 | 1,620.00 |
| 7 | Computed Radiography Interpretation | 9.00 | 63.00 |
| 2 | Ultrasound Interpretation | 19.00 | 38.00 |

**Total** $1,721.00

| Fax # | E-mail |
|---|---|
| 1-855-672-3888 | rkolb@nradsolutions.com |